IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| EDEN FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00594 (CMH/WBP) |
| | ) | |
| EDENFOODSCANADA.COM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

Before the Court is Plaintiff Eden Foods, Inc.'s ("Eden Foods") Motion for Default Judgment ("Motion"; ECF No. 21) against EDENFOODSCANADA.com, EDENFOOD-COMPANYCANADA.com, EDENFOODSCOMPANYCANADA.com, EDANJOBS.com, EDANFOODOFFICIAL.com, EDENFOODCANADA.com, EDENFOODSERVICE.com, EDENFOODSRECRUITMENT.com, EDENFOODSCANADA.org, SUDNCOURIER-COMPANYCANADA.com, and SARDARJAGMOHAN.com (collectively, "Defendant Domain Names") and John Doe (collectively, "Defendants"). This serves as a proposed findings of fact and recommendations under 28 U.S.C. § 636(b)(1)(C), and a copy will be provided to all interested parties.

**I.     Procedural Background**

Eden Foods alleges that Defendants have illegally used Eden Foods' EDEN and EDEN FOODS marks without authorization. In support of these allegations, on April 8, 2025, Eden Foods filed a Complaint against EDENFOODSCANADA.com, EDENFOODCOMPANY-CANADA.com, EDENFOODSCOMPANYCANADA.com, EDANJOBS.com, and John Doe. (ECF No. 1.) On May 14, 2025, Eden Foods amended its Complaint to add EDANFOOD-

OFFICIAL.com, EDENFOODCANADA.com, EDENFOODSERVICE.com, EDENFOODS-RECRUITMENT.com, EDENFOODSCANADA.org, EDENFOODSCANADA.org, SUDN-COURIERCOMPANYCANADA.com, and SARDARJAGMOHAN.com. (ECF No. 7.) The Amended Complaint alleges violations of the federal Anti-Cybersquatting Consumer Protection Act ("ACPA") (Count I), trademark infringement (Counts II and III), and trademark counterfeiting (Count IV). (ECF No. 1 ¶¶ 97-129.)

On May 14, 2025, Eden Foods filed a Motion for Service by Publication requesting permission to serve Defendants by electronic means and through publication in either *The Washington Post* or *The Washington Times*, which the Court granted on May 19, 2025. (ECF Nos. 9 and 16.) Accordingly, Eden Foods arranged to have the Court's May 19, 2025, order published in *The Washington Times*, and it also served Defendants by email and other electronic means. (ECF No. 22 at 12.)

On June 18, 2025, Eden Foods asked the Clerk of Court to enter a default against Defendants, which the Clerk entered that same day. (ECF Nos. 19 and 20.) The Court held a hearing on Eden Foods' Motion on September 5, 2025. Eden Foods' counsel appeared, but no one appeared on behalf of Defendants.

## II.  Factual Background

The Amended Complaint (ECF No. 7) and Memorandum in Support for Default Judgment (ECF No. 22) establish the facts below.

Eden Foods is a Michigan corporation with its principal place of business in Clinton, Michigan. (ECF No. 7 ¶ 5.) Eden Foods offers natural and healthy food and beverage products in well-known grocery stores throughout the United States. (*Id.* ¶ 2; ECF No. 22 at 3.) Eden Foods

sells its products under a family of EDEN marks, including EDEN, EDEN FOODS, and EDEN ORGANIC (collectively, "EDEN Marks"). (ECF No. 7 ¶ 2.)

Eden Foods claims it recently became aware that the mark EDENFOODSCANADA.com had been registered, which misuses Eden Foods' marks, logos, and other imagery. (ECF No. 7 at 18-25.) Eden Foods alleges that EDENFOODSCANADA.com promotes the sale of food products and claims to offer employment opportunities with Eden Foods to overseas consumers. (*Id.*) After discovering the website, Eden Foods investigated further and found eleven more websites like EDENFOODSCANADA.com that also use the EDEN Marks and purport to hold themselves out as legitimate Eden Foods websites. (*Id.* at 5.)

Eden Foods alleges that these websites claim to be run by an individual named "Sardar Jugmohan Singh," who the websites falsely state is the "owner and founder of Eden Foods." (*Id.*) Eden Foods investigated Mr. Singh and believes that he has no affiliation with any of these websites but that his identity appears to have been stolen and adopted by operators of the domain names, referred to in the Amended Complaint as John Doe. (*Id.*) Eden Foods alleges that John Doe and the registrants of Defendant Domain Names have tried to conceal their identity and that consumers have fallen victim to the misrepresentations made by John Doe and Defendant Domain Names. (*Id.* at 6.)

### III. Proposed Findings of Fact and Recommendations

Rule 55 of the Federal Rules of Civil Procedure allows entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Because Defendants have failed to respond or otherwise defend the action, the Clerk entered default against them. (ECF No. 20.)

Once in default, the facts alleged in a complaint are considered admitted against the defendants, and the appropriate inquiry is whether the facts alleged state a claim. *See* FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) and *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Even so, the court does not automatically consider as admitted the amount of damages. *See* FED. R. CIV. P. 8(b)(6). Instead, Federal Rule of Civil Procedure 55(b)(2) allows the court to conduct a hearing to determine the amount of damages, to establish the truth of any allegation by evidence, or to investigate any other matter when necessary to enter or carry out judgment.

### A.   Jurisdiction and Venue

A court must establish both subject matter jurisdiction over a claim and personal jurisdiction over a party-in-default before a default judgment may be entered.

As for subject matter jurisdiction, district courts are vested with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction over any civil action arising under any Act of Congress relating . . . to trademarks," 28 U.S.C. § 1338(a). And district courts have jurisdiction over all federal trademark actions. *See* 15 U.S.C. § 1121(a). Here, the Amended Complaint alleges violations of the ACPA, trademark infringement, and trademark counterfeiting. Thus, this Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121(a).

The Court may exercise personal jurisdiction over Defendant Domain Names because the Court has *in rem* jurisdiction over them. Federal trademark law provides that "[t]he owner of a

mark may file an *in rem* civil action against a domain name in the judicial district in which the . . . domain name registry . . . is located if . . . the court finds that the owner . . . is not able to obtain *in personam* jurisdiction over a person who [otherwise] would have been a defendant in a civil action . . . ." 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Eden Foods could not obtain *in personam* jurisdiction over the registrants of the Defendant Domain Names because the identities of the registrants have been concealed or because the registrants have identified themselves as being outside the United States and therefore not subject to personal jurisdiction. (ECF No. 22 at 8.) Additionally, the domain name registries—VeriSign, Inc. and Public Interest Registry ("Domain Registries")—are located within this judicial district. (*Id.* at 22.)

The Court also has personal jurisdiction over John Doe. To exercise personal jurisdiction over a defendant, both the Virginia long-arm statute and federal due process standards must be satisfied. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Virginia's long arm statute, Code of Virginia section 8.01-328.1, extends the limits of a court's jurisdiction to the extent permitted by the Due Process Clause, meaning essentially the same standard is required for both. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Federal due process standards are met if the defendant maintains certain minimum contacts with the forum state, such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A court can exercise personal jurisdiction over nonresident defendants based on their internet contacts with a forum state. *See Overstock.com, Inc. v. Visocky*, No. 117CV1331 LMB/TCB, 2018 WL 11469768, at *2 (E.D. Va. Dec. 7, 2018). "A state may exercise personal jurisdiction over a nonresident defendant when that defendant '(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the

5

State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's Courts.'" *Id.* (citing *ALS Scan, Inc. v. Dig Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). Virginia may exercise personal jurisdiction over John Doe because he has operated interactive websites directed to Virginia residents that solicit engagement from visitors, conveyance of highly sensitive information, and transfers of funds. (ECF No. 1 ¶¶ 61-84.) If a Virginia resident were to engage with one of John Doe's websites, the Virginia resident would have a cognizable cause of action. Thus, the undersigned finds that this Court has jurisdiction over all Defendants.

Venue is also proper because the Domain Registries are situated in this judicial district. (ECF No. 22 at 10.)

**B.      Service**

On May 14, 2025, Eden Foods filed a Motion for Service by Publication seeking permission to serve Defendants by electronic means and through publication in either *The Washington Post* or *The Washington Times*. (ECF No. 9.) On May 19, 2025, the Court granted that motion and required Eden Foods to publish the Court's Order in *The Washington Post* or *The Washington Times* and to send the Order through email and other electronic means such as WhatsApp. (ECF No. 16.) The Court also required Eden Foods to file a declaration no later than 20 days after the entry of the Order documenting its compliance with the Order. (*Id.*)

On June 3, 2025, Eden Foods filed the Declaration of Adrienne J. Koask. (ECF No. 18.) Ms. Koask testified that she arranged to have a copy of the Order published in *The Washington Times* on May 22, 2025. (*Id.* ¶ 5.) Ms. Koask also testified that she served a copy of the Order on Defendants through email, online portals, and WhatsApp messaging. (*Id.* ¶¶ 6-8.)

For these reasons, Defendants were properly served.

### C. Grounds for Entry of Default

Under Federal Rule of Civil Procedure 12(a), Defendants had to file responsive pleadings within 21 days after service by publication and electronic means. Thus, responsive pleadings were due by June 12, 2025. No responsive pleadings have been filed by any Defendant, and the deadline for responding has expired.[1] On June 18, 2025, Eden Foods filed a request for entry of default (ECF No. 19), which the Clerk entered that same day (ECF No. 20).

Accordingly, the Clerk properly entered default as to all Defendants.

### D. Liability

Under Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because a default has been entered against all Defendants, the factual allegations in the Amended Complaint are considered admitted. *See* Fed. R. Civ. P. 8(b)(6).

#### 1. ACPA

Eden Foods alleges that the registrants of EDENFOODSCANADA.com, EDENFOODCOMPANYCANADA.com, EDENFOODSCOMPANYCANADA.com, EDANJOBS.com, EDANFOODOFFICIAL.com, EDENFOODCANADA.com, EDENFOODSERVICE.com, EDENFOODSRECRUITMENT.com, and EDENFOODSCANADA.org ("Cybersquatting Domains") have committed unlawful cyberpiracy in violation of the ACPA. (ECF No. 7 ¶¶ 97-103.)

---

[1] When Ms. Kosak served Defendant Domain Names through WhatsApp messaging, she did receive a response from the number + 1 (939) 320-7912. (ECF No. 18 ¶ 11.) The individual associated with that phone number inquired into who Ms. Kosak was and why she was reaching out. (*Id.*) Ms. Kosak identified herself as Eden Foods' counsel and reiterated that she could be contacted by email to obtain a copy of court filings, but she never received a response. (*Id.*)

To state a claim under the ACPA, Eden Foods must prove that the registrants of the Cybersquatting Domains (1) had a bad-faith intent to profit from using Eden Foods' distinctive marks; *and* (2) registered, trafficked in, or used a domain name that (a) is identical or confusingly similar to Eden Foods' distinctive marks; (b) in the case of a famous mark, is identical, confusingly similar to, or dilutive of Eden Foods' distinctive marks; or (c) is a protective trademark, word, or name. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).

The first consideration is whether Eden Foods' marks are distinctive. The act of registering a mark on the United States Patent and Trademark Office's Principal Register is *prima facie* evidence that a mark is not generic to the public but is distinct and has obtained a secondary meaning. *See Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Additionally, a mark's secondary meaning can be found "where there are extensive advertising expenditures, sales, successes, attempts to plagiarize [the] mark, and where [the] mark has been used exclusively for an extended period of time." *Cent. Source LLC v. annualdcreditreport.com*, No. 1:14-CV-304, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014).

Here, Eden Foods has obtained federal registrations for the EDEN Marks. (ECF No. 7 ¶¶ 36-60.) Eden Foods has also used the EDEN Marks to promote and sell its wide-ranging food-related products and services since at least 1967. (ECF No. 22 at 14.) Because the EDEN Marks are federally registered, and because Eden Foods extensively uses the marks in commerce, the undersigned recommends a finding that the EDEN Marks are distinctive.

The next consideration is whether the registrants of Cybersquatting Domains acted in bad faith. The ACPA provides several factors for determining whether a domain name registrant has acted in bad faith, including (1) whether the registrant has trademark or other intellectual

8

property rights in the domain name; (2) the extent to which the domain name consists of the legal name of the registrant; (3) the registrant's prior use, if any, of the domain name in connection with the *bona fide* offering of goods and services; (4) the registrant's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name; (5) the registrant's intent to divert consumers from the mark owner's website in a way that could harm the goodwill of the mark; (6) whether the registrant offered to transfer, sell, or otherwise assign the domain name to the mark owner for financial gain without having used the domain name; (7) whether the registrant used materially misleading contact information when applying for the domain name; (8) whether the registrant registered multiple domain names that he knows are identical or confusingly similar to the distinctive marks of others; and (9) the extent to which the incorporated mark is or is not distinctive and famous. *See* 15 U.S.C. § 1125(d)(1)(B)(i). These factors "attempt to balance the property interests of trademark owners with the legitimate interests of Internet users . . . including for purposes such as comparative advertising, comment, criticism, parody, news, reporting, [and] fair use." *Lamparello v. Falwell*, 420 F.3d 309, 319 (4th Cir. 2005). Not every factor needs to be met to establish bad faith, and the Court can consider other facts as well. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001); 15 U.S.C. § 1125(d)(1)(B)(i).

Eden Foods has shown that the Cybersquatting Defendants acted in bad faith. First, Eden Foods alleges that the Cybersquatting Domains do not reflect the trademark or intellectual property rights of their registrants. (ECF No. 22 at 16.) The undersigned agrees with this point, as the EDEN Marks belong to Eden Foods, as shown by the dozens of federal mark registrations. (ECF No. 7 ¶¶ 36-60.) The undersigned also finds it unlikely that the Cybersquatting Domains

reflect the legal names of their registrants, and that the registrants have not engaged in a bona fide noncommercial or fair use of the EDEN Marks. (ECF No. 22 at 16.)

Eden Foods also argues that the registrants have shown an intent to divert customers from Eden Foods' website in a way that could harm the goodwill of the marks. (*Id.*) By adopting domain names that include the EDEN Marks, the undersigned finds it is likely that the Cybersquatting Domains were registered to divert visitors to the Cybersquatting Domains when those visitors were trying to reach Eden Foods' goods and services.

Eden Foods alleges that the contact information for the registrants of the Cybersquatting Domains is misleading. (*Id.*) The undersigned finds that, because the Cybersquatting Domains' registrants concealed their identities, the registrants used materially misleading contact information when applying for the domain names.

Based on the above, the undersigned finds that ample evidence shows that the registrants of the Cybersquatting Domains acted in bad faith in violation of the ACPA.

The last consideration is whether each of the Cybersquatting Domains is identical or confusingly similar to the EDEN Marks. The registration of a domain name is likely to cause confusion among the public when "dominant or salient portions" of the domain name are identical to a mark. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). "A finding of likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008).

The Cybersquatting Domains are confusingly similar to the EDEN Marks. Each domain incorporates EDEN, EDEN FOODS, or a phonetically identical misspelling of those marks. (ECF No. 22 at 15.) By simply comparing the EDEN Marks with the Cybersquatting Domains,

10

the conclusion is obvious that the public's use of the Cybersquatting Domains would create confusion and misunderstanding. Thus, the undersigned recommends a finding that each of the Cybersquatting Domains is confusingly similar to the EDEN Marks.

Accordingly, because the EDEN Marks are distinctive, because the registrants registered the Cybersquatting Domains in bad faith, and because the Cybersquatting Domains are confusingly similar to the EDEN and EDEN FOODS marks, the undersigned recommends a finding that the registrants' actions violate the ACPA.

### 2. Trademark Infringement

Eden Foods alleges that the Defendant Domain Names and John Doe have infringed on its trademarks under the Lanham Act, 15 U.S.C. § 1114(1). The Lanham Act prohibits the use in commerce of a "colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods of services" that will likely cause confusion or deceive. 15 U.S.C. § 1114(1).

To make a valid claim for trademark infringement, a plaintiff must show that: (1) it owns a valid mark; (2) the defendant used the mark in commerce and without authorization; (3) the defendant used the mark, or an imitation of the mark, in connection with the sale, offering for sale, distribution, or advertising of goods and services; and (4) the defendant's use of a colorable imitation of the mark is likely to cause confusion among consumers. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012). To determine the likelihood of confusion, the Fourth Circuit has outlined factors that should generally be considered: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by

the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public. *See George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Only some of these factors may be relevant in any given case. *Id.* Further, "when the allegedly infringing mark is nearly an exact imitation of a plaintiff's mark in an apparent attempt to capitalize upon its popularity, there is a presumption of a likelihood of confusion." *Overstock.com, Inc.*, 2018 WL 11469768, at *6 (internal quotations omitted).

Eden Foods has shown sufficient facts to support a claim for trademark infringement under the Lanham Act. Eden Foods owns and has registered the EDEN Marks with the United States Patent and Trademark Office. (ECF No. 7 ¶¶ 36-60.) Without Eden Foods' authorization, Defendants have used the EDEN Marks on several websites to sell food-related products and services and to offer employment opportunities and immigration services. (*Id.* ¶ 3.)

Defendants' use of the EDEN Marks is likely to cause confusion among consumers. The EDEN Marks have been used in the marketplace since 1987, and they are distinctive in the marketplace. (ECF No. 7 ¶ 37.) Defendants have used identical marks to the EDEN Marks—attempting to capitalize on Eden Foods' reputation. (*Id.* ¶ 66.) Defendants have mimicked the EDEN Marks in (1) the food product industry and (2) in the recruitment and visas services industry. (ECF No. 22 at 19.) While Eden Foods' trademark registrations do not expressly cover recruitment and visa services, Eden Foods is a large company and consumers might expect Eden Foods to have employee recruitment services.

Further, Defendants intend to impersonate Eden Foods. They use Eden Foods' precise marks, hold themselves out to be Eden Foods, and one site even includes a picture of Eden Foods' president. (ECF No. 22 at 20, 22.) The misuse of the EDEN Marks has caused actual

12

confusion because some consumers have engaged with Defendants under the false impression they were communicating with Eden Foods. The undersigned recommends therefore a finding of trademark infringement under 15 U.S.C. § 1114(1).

### 3. Trademark Counterfeiting

Lastly, Eden Foods alleges a trademark counterfeiting claim against John Doe. (ECF No. 7 ¶¶ 121-29.) A counterfeit mark is "a spurious mark which is identical with, or substantially indistinguishable from a registered mark." *Tamaris (Gibraltar) Ltd. v. Vasilyevich*, No. 1:24-CV-01146 (AJT/LRV), 2025 WL 1673901, at *7 (E.D. Va. Feb. 10, 2025), *rep. and recommendation adopted*, No. 1:24-CV-1146 (AJT/LRV), 2025 WL 763100 (E.D. Va. Mar. 10, 2025) (quoting 15 U.S.C. § 1127). To show trademark counterfeiting, a plaintiff "must provide evidence that the defendant (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse or deceive." *GoSecure Inc. v. Bhandari*, No. 1:21-cv-1222, 2022 WL 15526054, at *6 (E.D. Va. Oct. 26, 2022).

Eden Foods has sufficiently pleaded facts to support a trademark counterfeiting claim. John Doe intentionally used counterfeit marks that are identical to, or substantially indistinguishable from, the EDEN Marks. (ECF No. 22 at 21.) John Doe knowingly used the counterfeit marks to hold his websites out as Eden Foods in connection with the sale of food products and recruitment and visas services. Finally, the use of counterfeit marks is likely to confuse consumers and already has confused at least one consumer.[2] Thus, the undersigned

---

[2] In its Motion, Eden Foods alleges that EDANJOBS.com has a comments section where one consumer inquired about the status of his or her purported fruit packing job with Eden Foods. (ECF No. 7 at 6.) Eden Foods never extended such a job offer. (*Id.*)

recommends a finding that Eden Foods has established a claim for trademark counterfeiting against John Doe.

### E. Damages

As relief, Eden Foods asks for the transfer of the Defendant Domain Names, injunctive relief, statutory damages, and interest.

#### 1. Transfer of the Defendant Domain Names

Eden Foods asks the Court to transfer of the Defendant Domain Names to Eden Foods. (ECF No. 22 at 22.) "The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner." *Cent. Source LLC*, 2014 WL 3811162, at *8. Further, courts have ordered the transfer of domain names when those domain names infringe on valid trademarks. *Cap. One Fin. Corp. v. Velocity-Black.com*, No. 1:23-CV-861 AJT/IDD, 2024 WL 1600673, at *8 (E.D. Va. Jan. 31, 2024) (quoting 15 U.S.C. § 1125(d)(1)(C)).

Defendant Domain Names are maintained by VeriSign, Inc. and Public Interest Registry, both of which reside in this judicial district. (ECF No. 22 at 22.) Therefore, because Eden Foods has established a violation of the ACPA and trademark infringement, the undersigned recommends that the district judge order VeriSign, Inc. and Public Interest Registry to change the registrar of record for the Defendant Domain Names to Eden Foods' registrar of choice, GoDaddy.com, LLC, and that GoDaddy.com, LLC change the registrant of the Defendant Domain Names to Eden Foods.

#### 2. Injunctive Relief

Eden Foods also asks the Court to grant an injunction barring John Doe from using any mark, including within a domain name, that is identical or confusingly similar to the EDEN

Marks. (ECF No. 22 at 23.) Eden Foods also asks the Court to direct the Domain Registries and any other service providers to disable all services used in furtherance of the business fraud described in the Amended Complaint. (*Id.*)

Under the Lanham Act, a court may grant injunctions to prevent trademark infringement. 15 U.S.C. § 1116(a). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See Christoper Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Courts have also entered injunctions that have restrained individuals and entities—such as the Domain Registries in this case—from contributing to activities that facilitate a defendant's unlawful actions. *See Overstock.com, Inc.*, 2018 WL 11469768, at *8.

First, Eden Foods has suffered an irreparable injury to the value and goodwill associated with the EDEN Marks. Second, money damages are inadequate to compensate for the harm Eden Foods has suffered because Eden Foods is unaware of who John Doe is—by his failure to appear in this action—and so John Doe will likely continue to infringe and "will not cooperate in any future suits for money damages." *Hilton Worldwide, Inc. v. Glob. Advert., Inc.*, No. 1:15CV1001, 2016 WL 8223436, at *8 (E.D. Va. Apr. 8, 2016), *rep. and recommendation adopted sub nom. Hilton Worldwide, Inc v. Glob. Advert., Inc.*, No. 1:15-CV-01001-GBL-TCB, 2016 WL 8231154 (E.D. Va. May 19, 2016). Third, if the Court were to grant Eden Foods' request for an injunction, John Doe would simply have to follow clearly established trademark

15

law, which is no hardship. Fourth, the public interest favors an injunction because prohibiting Defendants from using infringing websites would prevent the public from becoming confused by Defendants' continued use of the counterfeit versions of the EDEN Marks. An injunction also would maintain the reputation and goodwill of the EDEN Marks.

The undersigned recommends therefore that the district judge grant Eden Foods' request for injunctive relief.

### 3. Statutory Damages

Eden Foods asks for statutory damages of $4,000,000 from John Doe for trademark counterfeiting. The Lanham Act allows a plaintiff to elect statutory damages instead of actual damages when the defendant has used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. 15 U.S.C. § 1117(c). If a plaintiff elects statutory damages and the Court finds that the counterfeit mark was used willfully, a plaintiff may be awarded not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. *Id.* § 1117(c)(2). The Court has broad discretion in determining statutory damages. *See Cabinet Discounters, Inc. v. Serkisian*, No. CV PWG-16-1887, 2017 WL 2930461, at *1 (D. Md. July 10, 2017) (citing *Chanel, Inc. v. Banks*, No. WDQ-09-843, 2011 WL 121700, at *7 (D. Md. Jan. 13, 2011)). The exact amount of damages in counterfeiting cases is hard to determine, which is why the Lanham Act permits an award of statutory damages. *See Diane Von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356 (JCC), 2007 WL 3143690, at *5 (E.D. Va. Oct. 23, 2007), *aff'd*, 294 F. App'x 10 (4th Cir. 2008). Still, the Court "must never use

16

its broad discretion in fashioning a statutory remedy to result in a windfall for a plaintiff." *Chanel*, 2011 WL 121700, at *8.

Eden Foods has asked for $2,000,000 in statutory damages for use of the EDEN Mark and $2,000,000 in statutory damages for use of the EDEN FOODS Mark (ECF No. 22 at 25-26), for a total statutory damages award of $4,000,000. At oral argument on the motion for default judgment, counsel for Eden Foods was unable to adequately explain its basis for an award of this magnitude, other than to note that John Doe's lack of participation in this litigation has prevented it from more accurately justifying statutory damages and that it was seeking statutory damages for only two of its marks. The undersigned is sympathetic to Eden Foods' position, but it also has little to no information about the underlying "economic realities"—the economic impact of the infringing conduct on Eden Foods' business. *See Animaccord Ltd. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 1:22CV868 (LMB/WEF), 2023 WL 6206452, at *15 (E.D. Va. Feb. 28, 2023), *rep. and recommendation adopted*, No. 122CV868LMBWEF, 2023 WL 3940548 (E.D. Va. June 9, 2023) (stating that economic realities may serve as a floor to statutory damages). Eden Foods only provided screenshots of the infringing websites using the marks. (ECF No. 7 ¶ 66.) While claiming that the counterfeit use of the marks harms Eden Foods' goodwill and reputation, the record does not show that Eden Foods has lost profits. The undersigned recognizes that John Doe's failure to respond to the lawsuit deprived Eden Foods of discovery which might show lost profits. *See e.g.*, *Ontel Prod. Corp. v. Unincorporated Associations Identified in Schedule A*, No. 1:21-cv-1452 (MSN/JFA), 2022 WL 9874815, at *8 (E.D. Va. Aug. 12, 2022), *report and recommendation adopted*, No. 121-cv-01452MSNJFA, 2022 WL 4368157 (E.D. Va. Sept. 21, 2022). Although 15 U.S. Code § 1117(c) provides for a sliding scale of statutory damages for willful counterfeit use of a mark up to

17

$2,000,000, Eden Foods' inability to provide the Court with an estimate, does not support an award of maximum statutory damages. *See Animaccord Ltd.*, 2023 WL 6206452, at *16 (plaintiff's minimal information on economic realities did not support maximum statutory damages).

In addition to economic realities, a court "must take into account the need to deter others engaged in selling counterfeit goods[.]." *Diane Von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356 (JCC), 2007 WL 3143690, at *5 (E.D. Va. Oct. 23, 2007), *aff'd*, 294 F. App'x 10 (4th Cir. 2008). Despite not including specific financial information about lost profits or other damages, Eden Foods does provide screenshots of the counterfeit marks being used, which shows that statutory damages are justified. (ECF No. 7 ¶ 66.) John Doe also went to great lengths to conceal his identity, signaling willful infringement. *See Ontel*, 2022 WL 9874815, at *12 (actions to conceal identities and illusions of legitimacy by offering customer service showed willful misconduct for statutory damages).

Accordingly, the undersigned recommends an award of $750,000 for John Doe's use of the EDEN Mark and $750,000 for John Doe's use of the EDEN FOODS Mark, for a total damage award of $1,500,000.

### 4. Interest

In its proposed order in support of its Motion, Eden Foods asks for an award of pre- and post-judgment interest against John Doe on the statutory damages award. Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." This Court has also awarded pre- and post-judgment interest in similar trademark actions. *See e.g.*, *Cap. One Fin. Corp. v. Velocity-Black.com*, No. 1:23-CV-861 AJT/IDD, 2024 WL 1600673, at *9 (E.D. Va. Jan. 31, 2024); *Fox News Network, LLC v. xofnews.com*, No.

120CV00149AJTMSN, 2021 WL 5042995, at *10 (E.D. Va. Apr. 6, 2021), *rep. and recommendation adopted*, No. 120CV149AJTMSN, 2021 WL 5045065 (E.D. Va. Apr. 22, 2021). Thus, the undersigned recommends that the district judge award Eden Foods pre- and post-judgment interest against John Doe.

## IV.    Recommendation

For the reasons outlined above, the undersigned recommends that the district judge enter a default judgment for Eden Foods and against Defendants. The undersigned further recommends that the district judge (1) direct VeriSign, Inc. and Public Interest Registry to change the registrar of record for the Defendant Domain Names to Eden Foods' registrar of choice, GoDaddy.com, LLC, and that GoDaddy.com, LLC change the registrant of the Defendant Domain Names to Eden Foods; (2) permanently enjoin John Doe and any person or entity actively working with John Doe, from the continued, unauthorized use of Eden Foods' trademarks; (3) award Eden Foods statutory damages of $1,500,000 against John Doe; and (4) award Eden Foods pre- and post-judgment interest on the statutory damages award.

## V.    Notice

Through the Court's electronic filing system and by electronic notice, Defendants are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of this proposed findings of fact and recommendations, and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Eden Foods is directed to email or electronically transmit a copy of this proposed findings of fact and recommendations to Defendants in the same manner it served Defendants. Eden Foods is directed to file a certificate of service with the Court within three days of service.

Entered this 10th day of September 2025.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia